In the Matter of CORTLAND-CLINTON, INC., Doing Business as CORTLAND NURSING HOME, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents.

Fourth Department, November 4, 1977

*Harris, Beach, Wilcox, Rubin & Levey (Frank S. Hagelberg* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Sidney Grossman, Ruth Kessler Toch* and *Anne S. Meadvin* of counsel), for respondents.

CARDAMONE, J. We are called upon to review whether the determination of respondent, Commissioner of New York State Department of Health, that petitioner, Cortland Nursing Home, was guilty of violating 10 NYCRR 730.15 (d) ("anticipated" or "actual termination" of "heat services" in the nursing home) was supported by substantial evidence. We conclude that it was not.

Petitioner, Cortland-Clinton, Inc., doing business as Cortland Nursing Home (nursing home) instituted this article 78 proceeding to review the determination of respondent, Robert P. Whalen, Commissioner of Health, which imposed upon petitioner a $1,000 civil penalty based on its failure to notify the New York State Department of Health of the alleged failure of the nursing home's heating system as required by 10 NYCRR 730.15 (d) which provides: "The operator shall * * * (d) notify the department immediately of anticipated or actual termination of any service vital to the continued safe operation of the nursing home or to the health and safety of its patients and personnel, including but not limited to, the anticipated or actual termination of telephone, electric, gas, fuel, water, heat, air conditioning, rodent or pest control, contract food, or contract laundry services, and the services of key full or part-time employed personnel such as the administrator, director of nurses, consultant physician, consultant dietitian or others; and, apply remedial measures promptly and notify the department immediately regarding the nature of results of such measures".

Petitioner was charged in a notice of charges dated February 13, 1976 with three violations of the New York State

Public Health Law as follows: (1) the heating systems were not capable of maintaining all rooms at a minimum temperature of 75 degrees as required by 10 NYCRR 711.5(m)(5)(ii); (2) the administration failed to implement the policies of the nursing home by making operating decisions as required by 10 NYCRR 730.5(c)(2); (3) the operator failed to notify the New York State Department of Health of the failure of the heating system as required by 10 NYCRR 730.15(d).

Following a hearing upon these charges the hearing officer concluded that there is insufficient evidence in the record to establish that petitioner violated Charges (1) and (2). He did find that petitioner violated Charge (3) and recommended a reprimand be issued for the violation. The hearing officer also recommended that if respondent commissioner assessed a fine, it be a minimum one because of his findings that there was insufficient evidence to establish that the failure in the roof heating coils had existed for more than two or three days; at the time of respondent's investigation a heating contractor had already been engaged and was on the premises of the nursing home; there were no ill effects resulting from the drop in temperature from 75 degrees to 71 degrees in the corridors; the heating coils were repaired and the system was back in full operation one day after the complaint was received.

The commissioner adopted the findings and conclusions of the hearing officer, but further found that "the failure to notify the Department was serious in nature as it militated against the ability of the Department to supervise and ensure adequate patient care" and, thereupon, assessed a civil penalty of $1,000.

In this proceeding the petitioner contends that the commissioner's determination that it violated 10 NYCRR 730.15(d) was not supported by substantial evidence and it further contends that the imposition of a penalty of $1,000 was arbitrary, capricious and an abuse of discretion and that both determinations should be annulled.

In order to sustain its challenge to the respondent commissioner's quasi-judicial determination of guilt, the petitioner must show that that determination was not supported by substantial evidence (CPLR 7803, subd 4). The issue here is whether there was substantial evidence, considering the record as a whole, to support a finding that there was an "anticipated or actual termination of * * * heat * * * services" so as to require petitioner to so notify the respondent

department. In construing administrative rules, the same canons of construction applicable to statutes are to be used (1 NY Jur, Administrative Law, § 108). Generally the plain language used in a statute or administrative regulation should be construed in its natural and most obvious sense (see, e.g., *Matter of Terino v Levitt,* 44 AD2d 167, 169). Of course, where appropriate, the dictionary may be referred to in determining the sense in which a word is employed *(Matter of Hardecker v Board of Educ. of City of N. Y.,* 180 Misc 1008, 1011, affd 266 App Div 980, affd 292 NY 584; *Matter of Fullerton v General Motors Corp., Rochester Prods. Div.,* 46 AD2d 251, 252), especially where the word is not defined in the regulation and there is no documented history which accompanies the promulgation of the regulation to shed light on administrative intent (McKinney's Cons Laws of NY, Book 1, Statutes, § 234). These principles seem particularly applicable in a case such as this where violation of the regulation may subject the violator to heavy monetary penalties.

The relevant definition for "termination" contained in Webster's Third New International Dictionary (1971 ed) is an "end in time or existence". "Actual" is defined as "existing in fact or reality" (see, also, *Kelly v Supreme Council of Catholic Mut. Benefit Assn.,* 46 App Div 79, 82). The record supports a conclusion that the roof coil heating system was not in operation for a two- or three-day period in January, 1976. However, the hearing officer implicitly concluded that the failure of this admittedly auxiliary system which "provided, at most, 25% of the total heat" was an "actual termination of * * * heat * * * services" within the meaning of 730.15 (d). Such a conclusion requires a finding that there was a "real end in the existence" of heat services provided to the nursing home. The hearing officer's findings of fact, however, fail to support this conclusion.

Nor does this record support a conclusion of "anticipated * * * termination of * * * heat * * * services". Ballantine defines "anticipate" as "to expect; to foresee", and Webster defines it, *inter alia,* as "to look forward to as certain". No testimony is found to support the conclusion that it was "expected" (or, for that matter, that it should reasonably have been expected) by anyone on the scene—the contractor, or the department's own representative—that the failure of the roof coil system would lead to the "end in the existence" of heat services. All of the testimony, and even the hearing officer's

findings of evidentiary fact, are to the contrary. The record discloses that the interruption in the complementary or supplementary heating system in the nursing home was of a short duration and had limited consequences. The heating in the rooms was not affected and heat in the corridor dropped from the required 75 degrees to 71 degrees or 72 degrees. Upon investigation by the Department of Health the administrator of the nursing home temporarily remedied the situation by placing space heaters in the rooms. On the same day that the complaint was received, a heating contractor was already on the premises and the next day the heating coils were repaired.

Courts, of course, should not weigh the evidence where it conflicts and "room for choice exists", since choice lies with the administrative board and "its finding is supported by the evidence and is conclusive" when others might reasonably reach the same conclusion (Matter of Stork Rest. v Boland, 282 NY 256, 267, 274). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Edison Co. v Labor Bd., 305 US 197, 229). An order issuing from an administrative board must have a basis in the evidence having rational probative force when "viewed in the light of the record as a whole" (Matter of McCormack v National City Bank, 303 NY 5, 9), because "evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony" (Matter of Stork Rest. v Boland, supra, p 274). A fortiori, a record wholly barren of evidence, or one consisting of mere uncorroborated hearsay does not constitute substantial evidence (Edison Co. v Labor Bd., supra, pp 229-230), nor is a board's conclusion based on speculative inferences considered sufficient to sustain its determination (Matter of Sled Hill Cafe v Hostetter, 22 NY2d 607, 612-613).

Further, substantial evidence also means more than a "mere scintilla of evidence" (Matter of Stork Rest. v Boland, supra, p 273) because "insufficient evidence is, in the eyes of the law, no evidence" (Matter of Case, 214 NY 199, 203; Matter of 54 Cafe & Rest. v O'Connell, 274 App Div 428, 431, affd 298 NY 883). In sum, the test of whether substantial evidence exists in a record to support a quasi-judicial determination is one of rationality taking into account all the evidence on both sides (1 Benjamin, Administrative Adjudication in the State of New York, p 329; Matter of Kopec v Buffalo

*Brake Beam-Acme Steel & Malleable Iron Works,* 304 NY 65, 71-72). Thus, "substantial evidence" is not a talisman used by a court under which it automatically affixes its imprimatur on an administrative determination. Rather, it is a standard of review that requires a court to delve deeply into the record to determine the rationality of administrative action.

When considered in that light, we conclude that there is no substantial evidence to support the conclusion of an anticipated or actual termination of any service vital to the continued safe operation of the nursing home. At most, there was only a *temporary* failure to supplemental heating coils which caused a three- or four-degree drop in temperature in the corridors. There is no evidence which would support the conclusion that there was a real danger to the health or safety of the residents. Remedial measures were promptly taken to provide adequate heat during the interruption of heat and final repairs were completed within one day from the initiation of the investigation. The facts in this record, therefore, do not support a conclusion that petitioner nursing home violated 10 NYCRR 730.15 (d).

Accordingly, the determination should be annulled.

MARSH, P. J., SIMONS, GOLDMAN and WITMER, JJ., concur.

Petition unanimously granted, and determination unanimously annulled, with costs.