*268 OPINION OF THE COURT
David I. Schmidt, J.
Defendant George J. Crevatas, as trustee of the Crevatas Family Trust (trustee) moves for an order, pursuant to CPLR 3212, granting him summary judgment dismissing the complaint.
The motion is granted and the complaint is dismissed.
Plaintiff alleges that she suffered injuries on September 23, 2008, when she tripped and fell on the sidewalk in front of a house, owned by the defendant as trustee of the Crevatas Family Trust (trust), and located at 1616 Putnam Avenue in Queens, New York (premises). The premises is a two-family house,[1] that, at the time of the accident, was occupied by Anne Crevatas, who lived in the first-floor unit, and her son Raymond Crevatas, who lived in the second-floor unit. George Crevatas, Anne Crevatas’ other son, had originally rented the house starting in 1972, and his parents, Anne Crevatas and George Crevatas, Sr., had purchased the premises from the landlord in 1978. When George Crevatas, Sr., died in March 2002, Anne Crevatas became the sole owner of the premises. As part of her estate planning, Anne Crevatas, who was born on October 29, 1919, and who was 88 years old in August 2008, transferred ownership of the premises to the trust, by way of a quitclaim deed dated August 28, 2008 (deed). This deed expressly provided that the transfer was “SUBJECT TO THE LIFE ESTATE OF THE GRANTOR, ANNE CREVATAS.”
The trust, established by way of a Trust Agreement (Agreement) dated August 28, 2008, appointed George Crevatas as trustee, acknowledged the receipt of the deed, identified the premises as the “Trust Premises” and “acknowledged ANNE CREVATAS as the life tenant of such real property or any property substituted therefor as provided herein” (Agreement § second). The Agreement further notes that the trust premises is subject to conditions, including one providing that, “[t]he Grantor shall have the right to the exclusive use and enjoyment of the Trust Premises, without the requirement of any bond or security” (Agreement § first [A] [1]), and another providing that “[t]he Trustee shall be authorized, but not required, to pay for the expenses of maintaining the Trust Premises, including, but not limited to, real estate taxes and assessments, utilities, *269 insurance, improvements and repairs” (Agreement § first [A] [2]). Other provisions of the agreement give the grantor the power to transfer additional property to the trust (Agreement § fifth), and grant the trustee the power, among others, to buy and sell real property and to mortgage such property (Agreement § ninth [B], [D], [E], [F]; § eleventh). The trustee’s power to mortgage the trust premises, however, is subject to consent of the grantor (Agreement § eleventh). Finally, the agreement provides that the trust terminates upon the death of the grantor, and that the property of the trust will be sold and the balance of the trust estate remaining will be distributed equally to the grantor’s sons.
In moving for summary judgment, defendant contends that he may not be held liable under section 7-210 of the Administrative Code of the City of New York (Sidewalk Law)[2] for any failure to maintain the sidewalk abutting the premises because his ownership (as trustee) of the premises falls within the exception *270 for “one-, two- or three-family residential real property that is (i) in whole or part, owner occupied, and (ii) used exclusively for residential purposes” (Administrative Code § 7-210 [b], [c]). In opposition, plaintiff argues that the one-to-three-family residential property exception does not apply because Anne Crevatas may not be deemed an owner, and because defendant does not reside at the property. The court finds, however, that Anne Crevatas, as life tenant, is an owner for purposes of the exception to liability contained in section 7-210 (b), and since the property is owner occupied “in part,” defendant may not be held liable for failing to maintain the property under the Sidewalk Law.
The term “owner” is not defined in title 7 (addressing the liability of the City) or title 19 (addressing sidewalk and street maintenance) of the Administrative Code. The primary guide in determining the meaning of owner for purposes of section 7-210 (b) is thus the City Council’s intent in enacting the Sidewalk Law (see Braschi v Stahl Assoc. Co., 74 NY2d 201, 207-208 [1989]; see also People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919 [1995]). The statutory text, read in its plain and natural sense, generally provides the clearest indicator of the legislature’s intent (see Matter of Cortland-Clinton, Inc. v New York State Dept. of Health, 59 AD2d 228, 231 [1977]; see also Matter of Parkhurst v United Rentals Aerial Equip., Inc., 75 AD3d 702, 704 [2010], lv granted 15 NY3d 712 [2010]; see also Finnegan, 85 NY2d at 58). A court may also refer to dictionary definitions in determining the sense in which a word is employed (see Cortland-Clinton, Inc., 59 AD2d at 231; see also Braschi, 74 NY2d at 211). Such reference is not determinative here, however, as dictionary definitions of what constitutes an owner encompass both one who has the fee or title to property as well as the broader concept of one who has a right to occupy and use property.[3]
*271 Nevertheless, the City Council’s intent to include more than fee or title holders as owners may be inferred from its purpose in enacting the Sidewalk Law. As noted by the Court of Appeals:
“The City Council enacted section 7-210 in an effort to transfer tort liability from the City to adjoining property owners as a cost-saving measure, reasoning that it was appropriate ‘to place liability with the party whose legal obligation it is to maintain and repair sidewalks that abut them — the property owners’ (Rep of Comm on Transp, at 5, Local Law Bill Jacket, Local Law No. 49 [2003] of City of NY). Notably, the language of section 7-210 ‘mirrors the duties and obligations of property owners with regard to sidewalks set forth in Administrative Code sections 19-152 and 16-123’ (id. at 4; see also Office of Mayor Mem in Support, Local Law Bill Jacket, Local Law No. 49 [2003] of City of NY)” (Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 521 [2008]).
The purpose of the exception for owners of one-to-three-family dwellings “is to recognize the inappropriateness of exposing small-property owners in residence, who have limited resources, to exclusive liability with respect to sidewalk maintenance and repair” (Coogan v City of New York, 73 AD3d 613, 614 [2010]; Story v City of New York, 24 Misc 3d 325, 327 [Sup Ct, Kings County 2009]; Report of Infrastructure Div, Comm on Transp of Council of City of NY, Nov. 12, 2002 [in support of enactment of the 2003 amendment to section 7-210]). This focus on the person or entity that has the responsibility to repair and maintain a sidewalk, as well as the financial resources to do so, suggests that the City Council did not intend to limit the term “owner” to fee or title holders. Indeed, in other contexts in the Adminis *272 trative Code, the City Council has employed a broad definition of owners that includes the holders of life estates.[4]
Deeming a life tenant an owner under section 7-210 is consonant with this statutory purpose. A life tenant is more than a mere incumbrancer, such as a mortgagor, lienor or judgment creditor (see Ackerman v State of New York, 199 Misc 76, 80 [Ct Cl 1951]). While a remainderman may have fee title and a greater interest in the property than the life tenant, the life tenant is generally deemed an owner of the property as well and “is entitled to all of the benefits and burden[s] of such ownership although not a fee ownership, so long as the remainder interest is not affected” (Matter of Fisher, 169 Misc 2d 412, 413 [Sur Ct, Rockland County 1996]; Ackerman, 199 Misc at 80; see also Board of Educ., Hewlett-Woodmere Union Free School Dist. v Board of Assessors of County of Nassau, 54 AD2d 978, 979 [1976] [life tenant is an owner], Iv denied 41 NY2d 805 [1977]).
“It is a general rule that a tenant for life, since he enjoys the rents and profits of the land, must pay the taxes and make all ordinary, reasonable and nec *273 essary repairs required to preserve the property and prevent its going to decay or waste, unless the instrument creating his tenancy expressly provides otherwise” (Matter of Gaffers, 254 App Div 448, 451 [1938]; see also Board of Educ., Hewlett-Woodmere Union Free School Dist., 54 AD2d at 979).
This duty to make repairs has been held to include at least a portion of an assessment imposed for the purpose of sidewalk repairs (see Kirchner v Kirchner, 71 Misc 57, 63 [Sup Ct, Dutchess County 1911] [court apportioned sidewalk assessment between life tenant and remaindermen]), certainly the core concern for determining ownership for purposes of the Sidewalk Law.
Labor Law §§ 240 and 241 (6) also provide some guidance with respect to who may be deemed an owner under section 7-210. Although the term “owner,” as is the case here, is not defined in Labor Law §§ 240 and 241 (6), courts have found that an owner for purposes of those sections is not limited to the title or fee holder (see Kwang Ho Kim v D & W Shin Realty Corp., 47 AD3d 616, 618 [2008]; Copertino v Ward, 100 AD2d 565, 566 [1984]) and encompasses life tenants (see Castro v Mamaes, 51 AD3d 522, 522-523 [2008]; York v Steyaert, 50 AD3d 1472, 1473 [2008]; Young v Norton, 175 Misc 2d 175, 179 [Sup Ct, Saratoga County 1997]; see also Rosenblatt v Wagman, 56 AD3d 1103, 1104 [2008]). Accordingly, this court finds that a life tenant is an owner for purposes of Administrative Code § 7-210.
Plaintiff, however, asserts that Anne Crevatas may not be deemed an owner because she did not exercise control over the property. Indeed, there is no evidence that she paid for utilities. Moreover, George Crevatas was the person who performed repairs around the house and Raymond Crevatas was the one who shoveled/removed snow from the sidewalk and kept it clear of debris. In addition, plaintiff asserts that this lack of control is also shown by the provisions of the Trust Agreement empowering the trustee to sell or convey the property and mortgage it or otherwise encumber it. With respect to the utilities and repairs, the important factor in deeming Anne Crevatas an owner for purposes of section 7-210 is her right to exercise dominion and control over the property and her legal obligation to cover certain expenses related thereto,[5] notwithstanding the fact that *274 such expenses may actually have been paid by others (see Board of Educ., Hewlett-Woodmere Union Free School Dist., 54 AD2d at 979; Matter of Gaffers, 254 App Div at 451). The provisions of the trust allowing the sale of the property do not affect Anne Crevatas’ ownership interest because any sale by the trustee without her consent or permission would only convey the remainder interest and would not convey Anne Crevatas’ life estate in the premises (see Miller v Berg, 167 AD2d 118, 118-119 [1990]; Thorn v Stephens, 169 Misc 2d 832, 833 [Sup Ct, Westchester County 1995], affd for reasons stated below 236 AD2d 464 [1997]; 31 CJS, Estates § 104). Moreover, the Trust Agreement expressly provides that the trustee could only mortgage the trust premises with the consent of Anne Crevatas (Agreement § eleventh).
The remaining question is whether defendant may take advantage of the exemption for one-to-three-family owner occupied dwellings even though he did not reside at the premises. The answer to this question is provided by the express wording of the exception, which only requires that the property be “in whole or in part, owner occupied” (Administrative Code § 7-210 [b]). As Anne Crevatas is an owner, and occupied part of the premises, it was “in part, owner occupied.” Such a broad reading of the exception is warranted given that the imposition of liability on the abutting owners was enacted in derogation of the common law (see Vucetovic, 10 NY3d at 521; Coogan, 73 AD3d at 614 [literal and narrow interpretations that would thwart the statutory purpose should be avoided]; Almadotter v City of New York, 15 AD3d 426, 427 [2d Dept 2005]). Such a reading is also supported by reference to the Court of Appeals’ interpretation of the similar one- and two-family dwelling exception under Labor Law §§ 240 and 241 (6). This exception to those Labor Law sections was enacted for essentially the same reasons as the exception to section 7-210, and the Court of Appeals has held that its remedial purpose requires that it be applied flexibly and pragmatically (see Bartoo v Buell, 87 NY2d 362, 367-368 [1996]). Of particular relevance here are decisions finding that corporate ownership of a property, in and of itself, does not preclude application of the homeowner exception to sections 240 and 241 (6) (see Baez v Cow Bay Constr., 303 AD2d 528, 528-529 [2003], lv denied 2 NY3d 701 [2004]; Telfer v Gunnison Lakeshore Orchards, 245 AD2d 620, 621 [1997], lv denied 92 NY2d 803 [1998]; see also Castellanos v United Cerebral Palsy Assn. of Greater Suffolk, Inc., 77 AD3d 879, 880 [2010], lv denied *275 16 NY3d 704 [2011]; Uddin v Three Bros. Constr. Corp., 33 AD3d 691, 692-693 [2006]).[6]
In application, courts have found that the exception to section 7-210 applies to entities that cannot be deemed to reside in the dwelling. For example, in Schwartz v City of New York (74 AD3d 945, 946 [2010]), the Appellate Division found that the exception applied to a corporate entity. This corporate entity owned a 50% share of the premises in common with an individual owner who owned the remaining 50% share of the premises and who resided in the premises. The ownership of this corporate entity was split between a person who resided at the premises at issue and one who did not reside there. Despite these facts, the Appellate Division concluded that the corporate entity was entitled to dismissal of the complaint based on the exception (see Schwartz v City of New York, 74 AD3d 945, 946 [2010]).[7] Similarly, a trial court has found that a condominium association for a three-unit condominium in which one of the units was occupied by a unit owner and the other two were occupied by lessees of the unit owners could take advantage of the exception under section 7-210 (b) (see Boorstein v 1261 48th St. Condominium, 30 Misc 3d 1241 [A], 2011 NY Slip Op 50421[U] [Sup Ct, Kings County 2011]).[8]
Ultimately, no policy is offended by applying section 7-210’s exception to defendant. As noted above, the transfer of fee to defendant was done as part of estate planning, and not for commercial purposes, and nothing about defendant’s ownership as trustee conflicts with the goal of protecting small property owners with limited resources from liability (cf. Coogan, 73 AD3d at 614; see also Castellanos, 77 AD3d at 880; Uddin, 33 AD3d at *276 692-693). Accordingly, as the dwelling here was partially owner occupied by an owner, the life tenant Anne Crevatas, and as it is undisputed that the property was used exclusively for residential purposes, defendant has demonstrated, prima facie, that the exception contained in section 7-210 (b) is applicable as a matter of law. In addition, defendant has also shown, prima facie, he may not otherwise be held liable by submitting undisputed evidence demonstrating that he did not create the dangerous sidewalk condition through a negligent repair, special use or other means (see James v County of Nassau, 85 AD3d 971 [2011]; Holmes v Town of Oyster Bay, 82 AD3d 1047, 1048 [2011]). As plaintiff has failed to submit any evidence demonstrating a factual issue warranting denial of defendant’s motion, defendant is entitled to summary judgment dismissing the complaint.

. At his deposition, defendant testified that he did not know whether the house was “zoned” as a two- or three-family house. However, he did testify that it was only divided into two apartments.

= Section 7-210 provides:
“a. It shall be the duty of the owner of real property abutting any sidewalk, including, but not limited to, the intersection quadrant for corner property, to maintain such sidewalk in a reasonably safe condition.
“b. Notwithstanding any other provision of law, the owner of real property abutting any sidewalk, including, but not limited to, the intersection quadrant for corner property, shall be liable for any injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk. This subdivision shall not apply to one-, two- or three-family residential real property that is (i) in whole or in part, owner occupied, and (ii) used exclusively for residential purposes.
“c. Notwithstanding any other provision of law, the city shall not be liable for any injury to property or personal injury, including death, proximately caused by the failure to maintain sidewalks (other than sidewalks abutting one-, two- or three-family residential real property that is (i) in whole or in part, owner occupied, and (ii) used exclusively for residential purposes) in a reasonably safe condition. This subdivision shall not be construed to apply to the liability of the city as a property owner pursuant to subdivision b of this section.
“d. Nothing in this section shall in any way affect the provisions of this chapter or of any other law or rule governing the manner in which an action or proceeding against the city is commenced, including any provisions requiring prior notice to the city of defective conditions.”

. For example, definitions of owner include: “one that owns: one that has the legal or rightful title whether the possessor or not: PROPRIETOR” (Websters Third New International Dictionary 1692 [1993]);
“One who owns; the rightful proprietor; one who has legal or rightful title, whether he is the possessor or not; in a general sense, one who has or possesses. When used alone it does not necessarily imply exclusive or absolute ownership. One who holds subject to a mortgage or otherwise has only a qualified fee, is generally termed owner if he has a right to possession” (The Century Dictionary 4214 [1895]); and *271 “The person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.
“The term is, however, a nomen generalissimum, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied. The primary meaning of the word as applied to land is one who owns the fee and who has the right to dispose of the property, but the term also includes one having a possessory right to land or the person occupying or cultivating it” (Black’s Law Dictionary 996 [5th ed 1979]).

. In other Administrative Code definitions, an owner is “[a] person having an estate, interest or easement in the real property being acquired or a lien, charge or encumbrance thereon” (Administrative Code § 5-301 [5] [condemnation]; § 5-430 [3] [street condemnation]);
“a person in whom legal or equitable title to property or premises is vested, a mortgagee or vendee in possession of premises, as assignee of rents, a receiver of premises, or a person listed as owner or agent for an owner on the records as to real property ownership maintained by the bureau of city collections of the department of finance unless such person establishes that such records are erroneous or, if claiming that he or she is an agent of the owner, furnishes the identity of the owner” (Administrative Code § 24-526 [7] [sewage]);
“[a] person having legal title to premises; a mortgagee or vendee in possession; a trustee in bankruptcy; a receiver or any other person having legal ownership or control of the premises” (1968 Building Code of City of NY [Administrative Code] § 27-232); and “[the] owner of the freehold of any real property (as defined in section two of the Real Property Law), or of a lesser estate therein, a mortgagee or vendee in possession, assignee of rents, receiver, executor, trustee, lessee, agent, or any other person, firm or corporation, directly or indirectly in control of real property. Any reference in this code to the owner of any structure shall be deemed to designate collectively any and all of the foregoing, including, but not limited to, the owner of the freehold or lesser estate therein and a managing agent designated by such owner pursuant to Section 27-2098 of the New York City Administrative Code” (NY City Fire Code § FC 202 [Administrative Code, tit 29, ch 2]).

. While the Trust Agreement allows the trustee to pay such expenses (Agreement § FIRST [A] [2]), nothing in its language alters Anne Crevatas’ legal obligation to pay them.

. The exception to the Labor Law provisions is distinguishable from the exception to section 7-210 in that it does not mandate that the home be at least partially owner occupied. Nevertheless, the decisions addressing the Labor Law exception provide guidance given the similar goals behind both exceptions.

. To the extent that the above-noted facts are not found in the Appellate Division’s decision in Schwartz, they are taken from the unreported decision of the trial court (Schwartz v City of New York, Sup Ct, Kings County, Oct. 9, 2009, Hurkin-Torres, J., index No. 30763/07).

. The condominium association, not individual unit owners, is the entity to be sued where the common elements of a condominium are at issue (see Pekelnaya v Allyn, 25 AD3d 111, 120-122 [2005]; Antonucci v Stone, 13 AD3d 1177, 1177-1178 [2004]). Although an exterior sidewalk is not expressly described as a common element, it is certainly consistent with the items deemed common elements under the Condominium Law (Real Property Law § 339-e [3]; see also Hidden Ridge At Kutsher’s Country Club Homeowner’s Assn. v Chasin, 289 AD2d 652, 653-654 [2001]).