*329
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 In this declaratory judgment action, we conclude that New York City’s Local Law No. 63 of 1986 (Administrative
 
 *330
 
 Code of City of New York § 11-208.1), which requires owners of income-producing property in New York City to furnish income and expense statements to the Commissioner of Finance in preparation for real property assessment, is constitutional on its face and a valid exercise of the City’s home rule power. The order of the Appellate Division should be reversed and the City’s cross motion for summary judgment granted, declaring Local Law No. 63 constitutional.
 

 Shortly after the ordinance was reenacted in December 1986, respondents, a group of real property owners and real estate industry trade associations, instituted this action. They moved for a preliminary injunction enjoining the enforcement of the local law; the City cross-moved for summary judgment declaring the local law valid and dismissing the complaint; and, during oral argument on those motions, respondents added their own cross motion for summary judgment. The trial court granted summary judgment to respondents and invalidated the ordinance and the Appellate Division affirmed on the opinion of the lower court (133 AD2d 67).
 

 New York City is a "special assessing unit” within which all real property is divided into four classes (Real Property Tax Law § 1802 [1]), each to be assessed at the same percentage of full value (RPTL 305 [2]). To comply with these State-wide mandates of the Real Property Tax Law, cities calculate real property taxes by determining the full value of each parcel, fixing the ratio of full value to assessed value in each class, and, finally, applying a uniform tax rate for each class of property to the assessed value producing the tax due
 
 (see generally, Foss v City of Rochester,
 
 65 NY2d 247, 254-256).
 

 Inasmuch as the accurate determination of the full value of the property to be taxed is the starting point for the assessor’s calculations, that foundation is critical to whatever formula or methodology is employed for ultimately arriving at the tax due. State law does not dictate a particular formula for determining the threshold of full value
 
 (Matter of Merrick Holding Corp. v Board of Assessors,
 
 45 NY2d 538;
 
 G.R.F., Inc. v Board of Assessors,
 
 41 NY2d 512). Three methods have become generally accepted: (1) sales analysis and comparison, also known as the market value approach and the most commonly used method; (2) income capitalization; and (3) replacement cost
 
 (Matter of Merrick Holding Corp. v Board of Assessors,
 
 45 NY2d 538,
 
 supra; Matter of City of New York [Salvation Army],
 
 43 NY2d 512;
 
 Matter of Great Atl. & Pac.
 
 
 *331
 

 Tea Co. v Kiernan,
 
 42 NY2d 236, 240). The income capitalization approach is generally regarded as the preferred method for determining the value of income-producing property, which is what is at issue in this case (1 Bonbright, Valuation of Property, at 216;
 
 see also, Matter of Merrick Holding Corp. v Board of Assessors,
 
 45 NY2d 538,
 
 supra).
 
 Understandably, the income capitalization method can be effective only with thorough data, including accurate actual income and operating expenses of the subject properties.
 

 In June 1986, New York City enacted a predecessor local law numbered 24 in order to formalize the procedure for acquiring such data. That law was invalidated, however, on the ground that a misprint in the City Record had caused improper notice to be given of the public hearing before the Mayor
 
 (41 Kew Gardens Rd. Assocs. v Tyburski,
 
 124 AD2d 553 [2d Dept],
 
 lv denied
 
 68 NY2d 612 [1986]). With minor modifications, that precursor was reenacted in December 1986 as Local Law No. 63 and is the subject of the instant proceeding.
 

 Local Law No. 663 provides that, with certain exceptions, owners of income-producing property in New York City must file a statement of "all income derived from and all expenses attributable to the operation of such property” (Administrative Code § 11-208.1 [a]). Statements reflecting the previous calendar year’s income and expenses were to filed by September 1, but the Commissioner of Finance could extend the date by 30 days (Administrative Code § 11-208.1 [a] [4]). (This court, in effect, stayed the effective date of this legislation by vacating the statutory stay inuring to the benefit of the City on its appeal from the lower courts’ invalidation of Local Law No. 63.) The law further exempts groups of small property owners from the filing requirement: (1) those whose property is assessed at $40,000 or less; (2) those who own residential property containing 10 or fewer dwelling units; and (3) those who own a property in class one or two, as defined by RPTL 1802, which contains six or fewer dwelling units and one retail store (Administrative Code § 11-208.1 [e]). Failure to file in the first instance is punishable by a fine of up to 3% of the property’s assessed value for the current year. Failure to file by a deferred date can result in a higher penalty of up to 4% of the assessed value; if the required statement is not filed for a second consecutive year, the penalty may reach as high as 5% (Administrative Code § 11-208.1 [d] [1]). A penalty can be imposed only after a property owner has had an opportunity to be heard (Administrative Code § 11-208.1 [d] [1]).
 

 
 *332
 
 In addition to these penalty provisions, the City Finance Commissioner is given other enforcement tools. If a required statement is not timely filed, the Commissioner can seek a court order compelling production of the statement. At its option, the Commissioner also can subpoena relevant books and records concerning the property’s income and operating expenses (Administrative Code § 11-208.1 [d] [3]). A property owner who does not file a timely statement may be precluded, under the terms of the local law, from using the City’s Tax Commission’s administrative review procedure (Administrative Code § 11-208.1 [d] [2]).
 

 Concern has also been expressed throughout the court challenges to this local law, including during the City Council’s consideration of this legislation, as to whether and to what extent the Council could or should provide for the confidentiality or nondisclosure of the filed statements. The local law contains a provision stating that it is unlawful for the Commissioner of Finance or the Tax Commission to reveal any statement "[e]xcept in accordance with proper judicial order or as otherwise provided by law” (Administrative Code § 11-208.1 [f|).
 

 Our analysis starts with the proposition that the State Constitution grants powers to municipalities by self-executing grants, which require no further State legislative implementation
 
 (e.g.,
 
 NY Const, art IX, § 1), and by indirect grants which require further legislation before a municipality may act
 
 (e.g.,
 
 NY Const, art IX, § 2). While the power to tax is vested solely in the State Legislature (NY Const, art III, § 1; art XVI, § 1), the Legislature has delegated to its municipal subdivisions the authority for them to assess and collect their own authorized taxes. Article IX, § 2 (c) (ii) (8) of the State Constitution expressly empowers cities to adopt and amend local laws including, but not limited to, the collection and administration of local taxes as authorized by the Legislature. Municipal Home Rule Law § 10 (1) (ii) (c) (2) is directly derived from this constitutional provision and it expressly grants to the City the authority to adopt local laws relating to "[t]he preparation, making, confirmation and correction of assessments”. The City’s authority to adopt a local law relating to the "preparation or making of assessments” may not be exercised in a manner inconsistent with the Constitution or any general law of the State
 
 (see, Consolidated Edison v Town of Red Hook,
 
 60 NY2d 99, 105).
 

 
 *333
 
 Next, a duly enacted local law is clothed with the presumption of constitutionality that applies to State legislative enactments
 
 (Lighthouse Shores v Town of Islip,
 
 41 NY2d 7, 11-12). This is especially pertinent and cogent in the area of taxation where special deference is given to legislative policy choices
 
 (Trump v Chu,
 
 65 NY2d 20, 25;
 
 Matter of Long Is. Light. Co. v State Tax Commn.,
 
 45 NY2d 529, 535;
 
 Shapiro v City of New York,
 
 32 NY2d 96, 103,
 
 appeal dismissed
 
 414 US 804). Defeating this presumption places a heavy burden, at the threshold, on the party challenging the local law
 
 (Lighthouse Shores v Town of Islip,
 
 41 NY2d 7,
 
 supra)
 
 to prove inconsistency with the State Constitution or general laws of the State.
 

 The property owners’ efforts in that regard, as gleaned from their complaint and as presented by the record and arguments in the various courts, may be condensed for our present purposes as follows: the City exceeded its limited authority to legislate in the area of real property tax assessment because Local Law No. 63 is vague, inconsistent with State law as an' unequal protection of law and as a discriminatory classification among real property owners; the State Legislature’s repeated refusal to enact specific legislation, sought by the City, demonstrated its intent that the City should not have the particular power exercised in this case; the purported confidentiality protection is illusory and in violation of the property owners’ constitutionally protected privacy rights; the subpoena power conferred by the local law is invalid and in conflict with State law and the Federal Constitution; and the penalty and limitation-on-administrative-review procedures violate due process rights.
 

 The City’s central contention, with which we agree based on the plain language of the State statutory authorization and its implementation in Local Law No. 63, is that the home rule provision (Municipal Home Rule Law § 10 [1] [ii] [c] [2]) supplies the express authority to enact Local Law No. 63 because the filing of income and expense statements relates essentially to the "preparation of assessments”.
 

 The pertinent response of the property owners is that the filing requirement is far more than just the "preparation of assessments”. They urge that the City’s enactment is an exercise of impermissible in personam taxing jurisdiction over individual property owners and is inconsistent with the so-called in rem nature of the real property tax as defined by the State Legislature
 
 (see,
 
 RPTL 304). It is in this particular
 
 *334
 
 respect among others, they argue, that the City exceeded its authority by enacting this local law. Their construction, however, is not persuasive because Local Law No. 63, by its terms, requires the filing of information related solely to the operation of the income-producing property. No distinctly "personal” financial information is required of anyone. To the extent that the data overlap or partake of some personal attributes, that is incidental to and inherent in the legitimate acquisition of information about the property itself.
 

 Notably, these data are of the type customarily required of real property taxpayers as a prerequisite to certiorari challenges to reduce assessments and taxes in particularized instances
 
 (see,
 
 NY City Charter § 163 [e]; §§ 164-a, 164-b;
 
 Matter of 749 Broadway Realty Corp. v Boyland,
 
 1 Misc 2d 575,
 
 affd
 
 1 AD2d 819,
 
 affd
 
 3 NY2d 737;
 
 see also,
 
 22 NYCRR 202.60 [c]). What the City is doing, in part and in effect, is generalizing and advancing that process, accomplishing an evenhandedness among all similarly situated taxpayers while improving the accuracy of its assessment preparation process.
 

 The filing requirement of this local law does not relieve a municipality, as an assessor, from its statutorily imposed nondelegable duty of determining the value of the property to be taxed, nor on its face does it unfairly or inappropriately shift the burden of doing so to the real property taxpayer. The required information serves instead to assist the assessor in the valuation process and in the preparation of the assessment, according to prescribed law and procedure. We have no occasion here to pass on infringements in cost or otherwise which may wrongly burden a taxpayer, because this local law by its terms goes no farther than requiring the filing of otherwise available income and expense data.
 

 The property owners’ further contention that the City’s enactment conflicts with Real Property Tax Law § 1802 fails because article 18 of the Real Property Tax Law deals exclusively with methods of assessment and, as has been pointed out, Local Law No. 63 deals with preassessment valuation information. While Local Law No. 63 does create new and different classes, those classifications are drawn for purposes of gathering distinctive, productive information related to the valuation process and not directly for the assessment itself, as the property owners claim. There is no conflict between the two enactments; rather, they complement one another. Indeed,
 
 Parker 86th Assocs. v City of New York
 
 (93 AD2d 388,
 
 *335
 

 affd
 
 59 NY2d 986), supports the City’s position in this regard because there we upheld a local law directing owners of property with a value in excess of $30,000 to pay taxes in two rather than four installments. In response to the claim that the law was inconsistent with the classification scheme of RPTL article 18, the courts concluded that the local law’s classifications were created for purposes of
 
 collection
 
 — not
 
 assessment
 
 — and that there was no conflict between the two. In this case, Local Law No. 63 distinguishes between relatively larger and smaller properties for purposes of the
 
 preparation of assessments
 
 — not for purposes of the
 
 actual assessment.
 

 Another aspect of the authority-to-enact issue warrants passing comment. The property owners argued strongly that there could be no
 
 implied
 
 authority for the City to act because of the State Legislature’s failure, after many years of effort by the City, to enact express authorizing legislation
 
 (cf., CPC Intl. v McKesson Corp.,
 
 70 NY2d 268;
 
 Matter of Knight-Ridder Broadcasting v
 
 Greenberg; 70 NY2d 151;
 
 Matter of Bliss v Bliss,
 
 66 NY2d 382). This contention is neither persuasive nor pertinent because, as we have noted, it is the independent,
 
 express
 
 municipal home rule authority from which Local Law No. 63 derives its efficacy.
 

 We turn now to the property owners’ broad contention that the local ordinance is inconsistent with the State Constitution on equal protection grounds. We reject this argument for the same reason that it fails on the asserted inconsistencies with article 18 of the RPTL. While Local Law No. 63 distinguishes between taxpayers based on the size or value of the property, that does not per se render an enactment unconstitutional unless there is no rational basis for the classifications
 
 (Trump v Chu,
 
 65 NY2d
 
 20,supra).
 
 As with the general presumption of constitutionality, the rational basis prerequisite presents a heavy burden to those challenging the legislation
 
 (id.; Maresca v Cuomo,
 
 64 NY2d 242, 250). In contravention to this assertion of the property owners, the City advances several particular justifications for exempting and thus distinguishing smaller property owners from the filing requirements. First, in terms of potential revenue, the City shows that exempt properties produce a relatively small amount of the City’s tax revenue, while the properties covered by the local law comprise 20% of all income-producing properties and account for about 60% of all taxes attributable to those properties. Second, to require income and expense state
 
 *336
 
 ments from small property owners would be, as the City argues, a vain exercise because there would be little increase in tax revenues based on overriding State law limitations — the fixed, limited amount that assessments can be increased regardless of increase in value
 
 (see,
 
 RPTL 1805 [1], [2]). The properties covered by Local Law No. 63, on the other hand, are not subject to similar caps on assessment (RPTL 1805 [3]), a statutory distinction which itself provides a rational predicate for the distinctions drawn in the local law. Finally, there is support for the City’s assertion that the unnecessary and unfruitful burdens of preparing income and expense statements would also be disproportionately heavier for owners of the smaller exempted properties than it is for the relatively larger property owners covered by Local Law No. 63, a traditionally valid classification distinction in tax law
 
 (Trump v Chu,
 
 65 NY2d 20, 27,
 
 supra).
 

 Local Law No. 63 is not unconstitutionally vague; it might more aptly be described as all too definitive. Moreover, "[d]ue process requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms”.
 
 (Foss v City of Rochester,
 
 65 NY2d 247, 253,
 
 supra.)
 
 Here that standard is satisfied because the disputed terms
 
 (e.g.,
 
 "income”, "expense”, "assessed value” and "current fiscal year”) are defined by judicial construction or are commonly used in other statutes without further definition
 
 (see, e.g., id.;
 
 SCPA 1704 [4]; State Finance Law § 98-a; Abandoned Property Law § 214; Not-for-Profit Corporation Law § 202 [b]; 22 NYCRR 202.60 [c]; Administrative Code § 11-208.1 [e]).
 

 We hold that Local Law No. 63 is facially valid. Thus, no inferences should be drawn concerning the validity of the implementation and application of the several enforcement mechanisms of this ordinance because it would be premature to speculate on the outcome of any appropriate proceedings instituted to challenge and to review penalties, or other enforcement mechanisms, including entitlement to administrative procedural safeguards, which are distinct and sever-able from the core filing requirement itself
 
 (see,
 
 Local Laws, 1986, No. 63 of City of New York, § 5).
 

 Similarly, the issue of whether the data from the filings may be made available to third parties is premature. The local law itself in conjunction with existing State law provide independent procedures and protections within which privacy claims can be adjudicated
 
 (see,
 
 Public Officers Law §§ 87, 89).
 

 
 *337
 
 Finally, the property owners’ contention that certain letters mailed to property owners constituted official "rules and regulations” and as such were not properly promulgated pursuant to New York City Charter § 1105 is without merit. The letters did not create any new exemption or requirements. They merely informed non-"income-producing” property owners that they need not file a statement under Local Law No. 63.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the City’s cross motion for summary judgment declaring Local Law No. 63 constitutional should be granted.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
 

 Order reversed, etc.