OPINION OF THE COURT
Mary M. Werner, J.
This is an RPTL article 7 proceeding to review the real property tax assessment of certain real property located on West Main Street, River head, New York. A trial was held before this court on October 23, 1995. Submissions were received on November 8, 1995. The following constitutes the court’s findings of facts and conclusions of law.
The subject property consists of 5.2 acres improved with seven two-story garden apartment buildings containing 112 apartment units. There is also a parking garage building containing 16 parking stalls. The property is located on the north side of West Main Street just east of the Long Island Expressway.
After petitioner’s previous tax certiorari proceedings were settled in 1993, the Board of Assessors immediately raised the assessment on the subject property, resulting in the instant petition. The proceeding is limited to the 1994-1995 tax year.
At the trial both parties stipulated to the equalization rate, which is .3247. Both sides also agreed that the income approach to value was the most appropriate method of appraising the subject income-producing property. Both parties’ experts used this method which involves first a determination of the net annual income for the subject property. This is done by subtracting gross annual expenses from gross annual income. To this figure a capitalization rate is applied as determined by each appraiser. The result is the appraiser’s opinion of the present worth of the future benefits of the property, or its present fair market value.
In this case, both experts were in close agreement on both the expenses of the apartment complex and the capitalization *76 rate. It is the income of the property which presents the biggest dispute.
It is well settled that actual income and expenses, when available, are the best indicators of an income-producing property’s value (see, 41 Kew Gardens Rd. Assocs. v Tyburski, 70 NY2d 325 [1987]; Matter of Town of Riverhead v Saffals Assocs., 145 AD2d 423 [2d Dept 1988]).
"Actual rental income is usually the best guide to value unless the rent has been determined without regard to the market place.” (Matter of Burke Apts. v Howe, 98 AD2d 595 [3d Dept 1984].)
Petitioner’s appraiser analyzed eight comparable rental properties and established a range of market rents per month. He concluded that the actual rental of $645 for a one bedroom with a deck, $630 for a one bedroom without a deck and $810 for a two bedroom with a deck were within the market range and therefore the actual rental was the indicated rental.
Petitioner’s contention as to potential gross income (P.G.I.) can be summarized:
Units Rent/mo 12 P.G.I.
1 Bedroom w/deck 28 X $645 X 12 = $216,720
1 Bedroom w/o deck 56 X 630 X 12 = 423,360
2 Bedroom 27 X 810 X 12 = 262,440
$902,520
Respondent’s appraiser, without benefit of the rent roll, analyzed four comparable rental units and determined that the range of market rent for a comparable one bedroom was $650 to $730 and selected $675 as the indicated rent for a one bedroom in the subject property. Similarly, with respect to two-bedroom apartments, the appraiser found that the range of market rents to be $775-$860 and found that the indicated rent for petitioner’s two-bedroom apartments to be $850.
Respondent’s contention as to potential gross income is summarized:
Units Rent/mo 12 P.G.I. | 1
1 Bedroom CO X $675 cq X = $680,400
2 Bedroom X OO <N 850 X 12 285,600
1966,000
$966,000 minus $902,520 = $63,480. Thus, respondents attribute to value more than $60,000 in income than petitioners actually received.
*77 Respondents’ appraiser provides no explanation for not accepting petitioner’s actual rent except for her assertion that she never received the rent roll. (As evidenced by petitioner’s exhibit 4, petitioner’s counsel forwarded this information to respondent on June 2, 1994. Apparently, it never made its way to respondent’s appraiser.) She did testify, however, that even if she had the rent roll, her appraisal would remain the same. She testified that her figures are based on the market, but provides no plausible reason to reject petitioner’s actual rent.
Moreover, Matter of Merrick Holding Corp. v Board of Assessors (45 NY2d 538 [1978]), cited by respondents’ counsel in conference, provides no support for this rejection.
In that case, the Court of Appeals rejected a per se rule and stated that "if examination discloses that rent has been arbitrarily set without regard to the market rental value whether through self-dealing * * * or, certainly where there is any indication of collusion, the rent arrangement will be of little, if any guidance to sound appraisal” (supra, at 543).
In the case at bar, respondent has not attempted to show self-dealing or collusion.
Moreover, this is not a case where value is distorted because of reliance on contract rents involving property subject to below market long-term leases which would require compensatory measures (supra).
Since respondent failed to give any reason for rejecting the actual rent, the court adopts petitioner’s expert’s figures with respect to rental income, to wit, $902,520.
The court also accepts petitioner’s figures with respect to additional income ($9,600 for parking and $9,600 for laundry) as well as the amount of deduction for vacancy and collection, $27,363. The court notes that these figures are consistent with or very similar to respondents’ figures.
The effective gross income (e.g.i.) is thus:
$ 902,520.00 (apt. rent)
+
+
9.600.00
9.600.00 ■ 27,363.60
$ 894,356.40
(laundry)
(parking)
(vacancy & collection) (e.g.i.)
There was very little discrepancy between petitioner’s total expenses of $402,069 and respondents’ of $392,708.52. Again, respondents provided no reason not to accept petitioner’s figures which are based in large part on actual figures. Accordingly, the court accepts petitioner’s figures as to expenses:
*78 $ 894,356.40
- 402,069.38
$ 492,287.02 (net operating income before deduction of taxes)
The court must now apply the capitalization rate to the net income. Petitioner’s appraiser sets forth 0.1333 as the appropriate rate, while respondent’s appraiser sets forth 0.1340.
The court accepts petitioner’s rate of 0.1333.
492,287.02 = 3,693,075.92
0.1333
Thus, the indicated value is $3,693,075.92. To determine the indicated assessment one must multiply the indicated value by the equalization rate of .3247:
3,693,075.92 X .3247 = 1,199,141.75
rounded up to 1,200,000
The actual assessment is $1,325,000.
$ 1,325,000 (actual)
— 1,200,000 (indicated)
$ 125,000 (reduction)
Based on the above calculation, petitioner is entitled to a reduction in assessment of $125,000.
Finally, while the court rejected respondents’ appraisers’ figures for the above-stated reasons, the court must state for the record its serious reservations regarding the Town’s utilization of the Suffolk County Real Property Tax Service Agency to prepare its trial appraisal and to appear in court to testify.
The Suffolk County Real Property Tax Service Agency was established pursuant to RPTL 1530 which provides that in each county, such as Suffolk County, that does not assess real property for taxation purposes, there shall be a real property tax service agency.
The powers and duties of the director of real property tax services are enumerated in RPTL 1532, which provides that in addition to other specified services provided to cities and towns within the county, the director shall "provide advisory appraisals to cities and towns as required by section fifteen hundred thirty-six of this chapter” (RPTL 1532 [1] [b]).
This advisory appraisal service is available to towns upon written request of the town’s chief executive officer for moderately complex taxable properties (RPTL 1536 [1]). The reports generated by the appraisal are filed with the Town As *79 sessor (RPTL 1536 [3]). These advisory appraisals "shall be considered by the assessor of the city or town in making assessments but shall not be binding upon him [or her]” (RPTL 1536 [6]).
Thus, there is no statutory authority in RPTL 1536 for the Suffolk County Tax Service Agency to prepare trial appraisals and to further appear in court to testify. Rather, the powers and duties of the Director in making appraisals are advisory and to assist the Town Assessor in making an assessment.
The Real Property Tax Service Agency is given the authority to provide testimony to defend an appraisal in RPTL 1537 (2) (e). However, this section, which provides that an assessing unit and the county may enter into an agreement for appraisal services, specifically provides that "an agreement between an assessing unit and a county for appraisal services shall provide for the county to appraise all real property within such assessing unit for assessment purposes” (RPTL 1537 [2] [a]).
Here, there is no such agreement before the court. In any event, it is clear that this appraisal was not completed in connection with a total reassessment of real property in the Town of Riverhead. This appraisal was completed to defend, in a tax certiorari matter, the existing assessment of a single parcel of real property. As such, there is no statutory authority for the Real Property Tax Service Agency to either prepare the instant appraisal or to appear in court to defend the same.
Moreover, since the County of Suffolk is responsible for payment of refunds after a successful tax certiorari challenge and in addition has a direct interest in the outcome of the proceeding, use of county personnel to prepare appraisals and appear as an expert witness poses an inherent conflict of interest that will not be allowed in this court.
Finally, the court notes the opinion rendered by the State Board of Equalization and Assessment, cited by both petitioner and respondent, specifically advises that "It is not a function of the County Director to appear as an expert witness on behalf of municipalities in certiorari proceedings with the possible exception, however, of cases in which the County Director has furnished the assessor with an advisory appraisal which was utilized by the assessor in determining the assessment under review.” (1 Opns of Counsel SBEA No.1-82.) In making this advisement, the Board noted the potential adverse effect on the Director’s ability to remain objective with his relationship with all municipalities in the county.
That the expert who prepared the report and appeared in court is not the Director, as pointed out by respondent, is irrel *80 evant. Surely respondent’s appraiser, an employee of the Real Property Tax Service Agency, prepared her appraisal and appeared in court either at the behest or with the consent of the Director. In effect, she appeared for him.
Since there is no statutory authority to support its utilization of this county agency to prepare its trial appraisals and since it has not rebutted what the court sees as an inherent conflict of interest, the court will no longer accept the appraisals and testimony of the Real Property Tax Service Agency in tax certiorari proceedings. The only exceptions being where the assessment itself is based upon an advisory appraisal prepared by the agency in accordance with all statutory requirements.