Miriam Osborn Mem. Home Assn. v Assessor of City of Rye (2004 NY Slip Op 50793(U))

[*1]

Miriam Osborn Mem. Home Assn. v Assessor of City of Rye

2004 NY Slip Op 50793(U)

Decided on July 22, 2004

Supreme Court, Westchester County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 22, 2004

Supreme Court, Westchester County
MIRIAM OSBORN MEMORIAL HOME ASSOCIATION, Petitioner,
against
THE ASSESSOR OF THE CITY OF RYE, THE BOARD OF ASSESSMENT REVIEW OF THE CITY OF RYE, AND THE CITY OF RYE, Respondents,
17175/97

Peter G. Bergmann, Esq.
Cadwalader, Wickersham & Taft, LLP
Attorneys for Petitioner
100 Maiden Lane
New York, N.Y. 10038
John E. Watkins, Jr., Esq.
Attorney for Petitioner
175 Main Street
White Plains, N.Y. 10601
Robert A. Weiner, Esq.
McDermott, Will & Emery
Attorneys for Respondents
50 Rockefeller Plaza
New York, N.Y. 10020-1605
Kevin Plunkett, Esq.
Corporation Counsel
City of Rye
Thacher Proffitt & Wood LLP
50 Main Street, 5th Floor
White Plains, N.Y. 10606

Thomas Dickerson, J.
In these proceedings, the Petitioner, The Miriam Osborn Memorial Home Association [ " the Osborn " ], " a not-for-profit organization which, for the past 90 years, has provided housing for the elderly in a facility situated on land located in the city of Rye "[FN1] seeks restoration of a " full mandatory exemption from real property taxes...pursuant to RPTL 420-a(1)(a) "[FN2] which it enjoyed from 1908 to 1996 when its exemption was revoked. The Respondents, The Assessor of the City of Rye, the Board of Assessment Review of the City of Rye and the City of Rye, later restored 20.8% of the Osborn's exemption prior to the commencement of these proceedings [FN3].
A Barrage Of C.P.L.R. § 408 Discovery
 After the denial of the Osborn's motion for summary judgment in 1999 [ see Miriam Osborn Memorial Home Association Ass'n v. Assessor of the City of Rye, 275 A.D. 2d 714, 713 N.Y.S. 2d 186 ( 2d Dept. 2000 )
( " Under the circumstances of this case, including the documentary evidence demonstrating that admission to Sterling Park is restricted to relatively healthy, elderly individuals who can afford to pay entrance fees ranging from $229,000 to $526,000 and monthly ' maintenance fees ' ranging from $1,850 to $2,500, material issues of fact exist as to whether the petitioner's primary use of the property is for charitable purposes " )], the Intervenor-Respondent, the Rye City School District [ " School District " ] sought discovery of the Osborn.
Some of the School District's discovery requests were consented to [ e.g., the Osborn allowed a physical inspection and videotaping of its facilities, produced in excess of " 9000 plus pages of documents as well as four computer disks "[FN4] ]. And some of the discovery requests were the subject of motions generating numerous Orders [FN5] of this Court which described some of the [*2]discovery requests as " blunderbuss "[FN6] in nature and duplicative in scope [ e.g., the School District made two requests for a second physical inspection of the Osborn's facilities, both requests being denied as unjustified ][FN7].
Not Ready For Trial
After more than 5 years of contentious litigation these proceedings were declared ready for trial on January 6, 2004 [FN8] and referred to this Court for a pre-trial conference. On February 17, 2004 this Court held a conference during which all parties agreed they were ready for trial. This Court issued a Scheduling Order establishing dates for the exchange of trial appraisals, submission of pre-trial memorandum of law and a three week trial commencing on June 9, 2004.
Thirty days later, however, the School District complained that, among other things, the Osborn had failed to complete Court ordered discovery and failed to serve and file income and expenses statements pursuant to 22 NYCRR § 202.59(b)[FN9], the submission of which the Osborn claimed to be unnecessary since " With each Article 7 Petition from 1999 onward ( it had attached to each ) its Internal Revenue Service Form 990-PF not-for-profit-return...containing a Statement of Revenue and Expenses "[FN10].
22 NYCRR § 202.59 Applies
 Somewhat belatedly the parties discovered that all tax assessment review proceedings in Counties outside of the City of New York are governed by 22 NYCRR § 202.59 which, among other things, requires petitioners to serve and file a " certified statement of income and expenses on the property for each tax year under review " [ 22 NYCRR § 202.59(b); see e.g., Matter of Pyramid Crossgates Company v. Board of Assessors, 302 A.D. 2d 826, 828, 756 N.Y.S. 2d. 2d 316 ( 3d Dept.
2003 ) ( " An income and expense statement is critical to valuating property under the income approach to value method...and is a condition precedent to investigating and auditing a [*3]petitioner's books and
records " ); May v. Assessor of the Town of Lancaster, 179 A.D. 2d 1006, 580 N.Y.S. 2d 910 ( 4th Dept. 1992 ); Matter of Rose Mount Vernon Corp. v. The Assessor Of The City of Mount Vernon, 1 Misc. 3d 809(A), 2003 WL 23112013 ( 2003 ) ] and gives respondents 60 days to request, and 120 days to complete, an audit " of the petitioner's books and records for the tax years under review "" for the purpose of substantiating petitioner's statement of income and expenses " [ 22 NYCRR 202.59(c); see Matter of Ames Department Stores, Inc. v. Assessor of the Town of Greenport, 276 A.D. 2d 890, 714 N.Y.S. 2d 363 ( 3d Dept. 2000 )
( " This regulation is designed to afford the other party or parties adequate time to examine and test the accuracy of the facts contained in the statement, and ultimately utilized in the appraisal " ); Matter of Georgian Court Apartment Masis Parseghian v. Assessor of the Town of Orangetown, 182 A.D. 2d 978, 980, 582 N.Y.S. 2d 533 ( 3d Dept. 1992 )].
More Discovery Disputes
 After a new Scheduling Order was issued on April 2, 2004, the Osborn filed its income and expenses statements pursuant to 22 NYCRR § 202.59(b) and the School District demanded [FN11] and commenced its 22 NYCRR § 202.59(c) audit [ " the § 202.59(c) audit " ] on June 1, 2004. From its inception the § 202.59(c) audit has generated additional disputes between the parties forcing this Court to micromanage nearly every aspect of the audit.
Initially, this Court addressed the School District's auditors' needs for access to numerous documents and adequate accommodations in which to conduct their audit [ e.g., The Osborn made available a room to a team of auditors which was " approximately 10 x 12 feet and does not have a telephone or copy machine. Until this morning, the air conditioning was not working "[FN12]. The auditors complained of a lack of cold " running water as well as nearby toilet facilities...today I had to fix the toilet within the room since the chain in tank was busted "[FN13]. After protesting that the room provided was " neat, clean and freshly painted " with a " flusher on the toilet ( that ) works ( and that ) this audit is not supposed to constitute further discovery...and is certainly not to be a ' forensic audit '"[FN14], the Osborn agreed to improve the auditors' working conditions by providing two air conditioned rooms with operable toilets and running water and " furnishing most of the secondary records that the auditors have requested "[FN15] ].
[*4]Scope Of The § 202.59(c) Audit

What is the scope of an audit pursuant to 22 NYCRR § 202.59(c)? The School District asserts that it's auditors must have " unrestricted access to the balance sheet accounts for all years in question in performing our audit "[FN16] and, further, " in order for an appraiser to determine true value of a property, the appraiser must have detailed information from the auditors that will enable Respondents' appraiser to understand and evaluate the broad categories of expenses listed by the Osborn in its Statement of Income and Expenses. Without this information, it will be extremely difficult for the appraiser to determine what is a normal operating expense or non-recurring ( i.e., extraordinary ) expense for the tax years in issue in this case "[FN17].
As authority for its position the School District relies upon an analysis [FN18] of it's auditors and the American Institute of Certified Public Accountants Professional Standards. Lastly, the School District offers to enter into a " Stipulation And Protective Order Concerning Substantiation-Audit Information " " that would assure the fact that any documents reviewed by the auditors and [ which had ] not been previously produced by the Osborn during the discovery period will not be used at trial "[FN19].
 Without detailing how it will be prejudiced by producing " balance sheet accounts ", especially within the context of the School District's proposed confidentiality agreement, the Osborn asserts that the School District should not have access to any " balance sheet accounts and balance sheet information " because, among other things, the School Districts may have sinister motives [FN20] and a statutory construction analysis of 22 NYCRR § 202.59(c) and its predecessor regulations supports the conclusion that the School District should be " permit(ed) an audit of ( the ) petitioner's income and expense accounts, and not balance sheet accounts "[FN21].
[*5]
DISCUSSION
The History Of Appraisal Rules
In 1967 C.P.L.R. § 3140 was enacted to make appraisals in
" proceedings for condemnation or appropriation or for the review of
tax assessments " more readily available and to serve as an " aid in the expeditious disposition of such proceedings " [ Matter of White Plains Properties Corp. v. Assessor of the City of White Plains, 58 A.D. 2d 871, 396 N.Y.S. 2d 875 ( 2d Dept. 1977 )( " Not only does the rule aid in disclosure, but it allows opposing counsel to adequately prepare for an effective cross-examination of a party's expert witness thereby abbreviating proceedings which must delve into complex construction costs and engineering data " )] since " without it most of the appraisal reports in these proceedings would qualify as ' material prepared for litigation ' and therefore be immunized from disclosure by CPLR 3101(d)(2) " [ McKinney's Consolidated Law of New York, Vol. 7B § 3140 at p. 858 ].
C.P.L.R. § 3140 allowed " the appellate division in each judicial department to adopt rules governing the exchange of appraisal reports for use at the trial in proceedings for condemnation, appropriation or review of tax assessments " and each of the Appellate Divisions enacted appraisal rules [ See City of Buffalo v. Ives, 55 Misc. 2d 730, 731-732, 286 N.Y.S. 2d 517 ( 1968 ) ]. In 1993 C.P.L.R. § 3140 was amended again, this time to allow the " chief administrator of the courts ", instead of the Appellate Divisions, to adopt such rules [ McKinney's, Supp 2004, § 3140 at p. 341 ].
The Second Department's appraisal rule was enacted in 1967 as N.Y. Court Rules §§ 678.1-678.3 [ McKinney's New York Rules of Court 1984, pp. 264-265 ] shortly after C.P.L.R. § 3140 was enacted [ Matter of White Plains Properties Corp. v. Assessor of the City of White Plains, supra, at 396 N.Y.S. 2d 873 ( " In discussing the need for this disclosure rule Professor David Siegel stated...' The Committee has asked that a CPLR amendment be devised for article 31 to enable court rules to make available free disclosure in...real estate tax certiorari proceedings...of each party's appraisals and their bases...The amendment is not self-executing, it requires implementation by court rule ' " )].
As it relates to the issues raised herein N.Y. Court Rule § 678.3(b) provided " If the property is income producing, petitioner must submit...together with the note of issue, a verified or certified statement of the income and expenses of the property for each of the tax years involved in the review proceeding...Within sixty days after the filing of the note of issue together with the verified or certified statement, a city, town or other political subdivision involved may request in writing an audit of the petitioner's books and records
[ emphasis added ] "

The Enactment Of 22 NYCRR § 202.59
In 1984 the Office of Court Administration circulated a " two
volume set of proposed rules and commentary...to all 1,031 full-time judges in the state and to 113 bar associations...sixty-two county clerks...According to the ' General Commentary ' [*6]accompanying the rules, the proposal is designed to replace a ' myriad ' of ' department-wide, district-wide and county-wide rules ' which often differ in ' format, detail and terminology '...While the new rules do not introduce any major substantive changes [ emphasis added ], they do take some concepts that had previously been applied in certain jurisdictions and make them applicable statewide " [ Wise, Uniform Rules Proposed For State's Trial Judges, New York Law Journal, February 17, 1984, p. 1 ].
At pages 118-119 of the two volume set was a proposed rule " 202.59 Tax Assessment review proceedings in counties outside the City of New York [FN22] ". Section 202.59(d) of the proposed rule replicated N.Y. Courts Rule § 678.3 in terms of what financial documents were to be the subject of the audit. Section 202.59(d) stated " (d) Audit. Within 60 days after the filing of the note of issue, the respondent may request in writing an audit of the petitioner's books and records [ emphasis added ] for the tax years in question; if requested, it must be completed within 120 days after the note of issue is filed ". The Commentary to the proposed section 202.59 stated " This section is designed to implement outside the City of New York Title 1 of Article 7 of the Real Property Tax Law, which authorizes tax certiorari proceedings. The section indicates the data and papers to be submitted by the petitioner with the note of issue. The section also provides a procedure for the audit of petitioner's books and records [ emphasis added ] by the respondent taxing unit...".
In November of 1984 " Chief Judge Lawrence H. Cooke announced...
That the Administrative Board of the Courts has approved the first set of uniform rules for the governance of the State's trial courts...to take effect April 1, 1985...The many comments received from those groups, Judge Cooke said, are ' reflected in almost every page of the new rules and their contribution is much appreciated '" [ First Uniform Rules Adopted For Trial Courts in State, New York Law Journal, November 9, 1984, p. 1 ]. In any event, when the new 22 NYCRR § 202.59(c) was enacted in 1986 it contained the following language " Within 60 days after the service of the statement of income and expenses, the respondent, for the purposes of substantiating petitioner's statement of income and expenses, may request in writing an audit of the petitioner's books and records [ emphasis added ] for the tax years under review " [ McKinney's New York Rules Of Court, 2004 at pp. 230-231 ].
Much Ado About Nothing
The Osborn makes much of the language, " for the purpose of substantiating petitioner's statement of income and expenses " [ " the substantiation language " ], as limiting the scope of the School District's review of its " books and records " by prohibiting access to balance sheet accounts. The Osborn asserts that the substantiation language is " limiting language ( and ) cannot be regarded as mere surplusage, but evidences the courts' intent to limit the types of books [*7]and records subject to audit "[FN23].
Absence Of Legislative History

The Osborn cites no legislative history to support its interpretation of the scope of § 202.59(c) although some comments by Judges, Clerks, Bar Associations and others may have been made in 1984 regarding the scope of the proposed § 202.59(d). It may very well be that the Osborn was unaware of the process by which 22 NYCRR § 202.59 was enacted or that comments [FN24] may have been made which may explain the significance of the language " for the purpose of substantiating petitioners's statement of income and expenses " [ emphasis added ][ See e.g., Majewski v. Broadalbin-Perth Central School District, 91 N.Y. 2d 577, 673 N.Y.S. 2d 966, 696 N.E. 2d 978 ( 1998 )( " It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature " ); Voicestream Wireless Corp. v. Assessor of the City of Troy, __Misc. 3d__, 771 N.Y.S. 2d 335, ___
( 2003 ) ( " The proper starting point for statutory interpretation is the statutory text, not the historical antecedents of the statute in question...Neither ( Nextel in ) Travis nor Voicestream presents any direct evidence of legislative history " )].
Reliance Upon Deductive Reasoning
The Osborn uses deductive reasoning to discover a meaning to the substantiation language in § 202.59(c) based, primarily, on a change from the audit language in N.Y. Court Rules § 678.3(b)[ " Indeed, if the limiting language is to have any meaning at all, it should be construed literally to permit an audit of a petitioner's income and expense accounts, and not balance sheet accounts "[FN25] ]. This Court rejects the Osborn's deductive reasoning as unsound [ See e.g., Voicestream Wireless Corp. v. Assessor of the City of Troy, __Misc. 3d__, 771 N.Y.S. 2d 335, ___ ( 2003 )( " Instead of direct evidence of legislative intent, Voicestream and Travis attempt to deduce a legislative intent. The Court is unaware of any precedent permitting courts, in the absence of either statutory ambiguity or direct evidence of legislative intent to speculate and make deductions based upon textural differences between statutes " ); Matter of Application of Nextel of New York, Inc.,__Misc. 3d__, 771 N.Y.S. 2d 853, 857 ( rejecting the use of deductive reasoning in statutory interpretation )].
Statutory Construction
[*8]
The Osborn cites McKinney's, Statutes § 193a to the effect that the addition of the substantiation language to § 202.59(c) must have a meaning and that meaning is to limit the scope of a § 202.59(c) prohibiting access to balance sheet accounts [FN26] [ See e.g., Matter of Stein, 131 A.D. 2d 68, 71-72, 520 N.Y.S. 2d 157 ( 2d Dept. 1987 ), appeal dismissed 72 N.Y. 2d 840 ( 1988 )( " When the Legislature amends a statute, it is presumed that the amendment was made to effect some purpose and make some change in the existing law...By enacting an amendment of a statute and changing the language thereof, the Legislature is deemed to have intended a material change in the law...Moreover, a statute will not be held to be a mere reenactment of a prior statute if any other reasonable interpretation is attainable ");
Matter of Cortlandt-Clinton, Inc. v. N.Y.S. Dept. Health, 59 A.D. 2d 228, 399 N.Y.S. 2d 492 ( 4th Dept. 1977 )( " In construing administrative rules, the same canons of construction applicable to statutes are to be used " )]. Notwithstanding this statutory presumption the Osborn's analysis is flawed for the following reasons. 
First, the purpose of C.P.L.R. § 3140 and N.Y. Courts Rules §§ 678.1-678.3, the predecessor to 22 NYCRR § 202.59, was to open up and encourage discovery as an " aid in the expeditious disposition of such proceedings ". The Osborn's interpretation would narrow discovery and otherwise discourage " the expeditious disposition " of the instant proceedings. The Osborn has produced nothing in the way of cases, commentary [ See e.g., In re Gellis' Estate, 141 Misc. 432, 441, 252 N.Y.S. 2d 725 ( 1931 )( " In this case it would be proper for the court to note the report of the commission appointed for the purpose of considering defects in the laws, pursuant to which the present statutory provision was adopted by the Legislature " )] or legislative history that would support such a dramatic and counterproductive change in policy [ "'...While the new rules do not introduce any major substantive changes [ emphasis added ], they do take some concepts that had previously been applied in certain jurisdictions and make them applicable statewide " ( Wise, Uniform Rules Proposed For State's Trial Judges, New York Law Journal, February 17, 1984, p. 1 )]. 
Second, changes in statutory language may reflect the recognition that a particular problem exists in the implementation of the underlying statute. The Osborn has failed to identify any such problem in implementing the audit permitted by N.Y. Courts Rules § 678.3(b) or by 22 NYCRR § 202.59 [ See e.g., Henavie v. The New York Central, 154 N.Y. 278, 281-282, 48 N.E. 525 ( 1897 )( "...a change in the manner of expression does not necessarily indicate a change in meaning, for the rule in the case of a revision of statutes is that where the law, as it previously stood, was settled either by adjudication or by frequent application of the statute without question..." [ emphasis added ] ); Hammel Station Estates, Inc., v. City of New York, 184 Misc. 859, 55 N.Y.S. 2d 249 ( 1945 )( statute amended to remedy an identified problem; " As stated on page 376 of the Eighth Annual Report on Judicial Council, 1942 ' this provision was enacted specifically to circumvent the conflict prevailing among the various departments regarding depositions in negligence actions '" )].
Third, the language " for the purpose of substantiating petitioner's statement of income and expenses " adds clarity but does not limit, in any way, the intended scope of the audit described in 22 NYCRR § 202.59(c) or in its predecessor N.Y. Courts Rule 678.3(b) [ See e.g., Henavie v. [*9]The New York Central, supra, at 154 N.Y. 281-282 ( " a mere change in the phraseology is not to be construed as a change in the law, unless the purpose of the legislature to work a change is clear and obvious...An examination of the different sections of the Code that were revised by the act under consideration shows many changes for the sake of brevity or clearness, or what was supposed to be an improvement in the form of expression " ); Blatnicky v. Ciancimino, 1 A.D. 2d 383, 388, 151 N.Y.S. 2d 267 ( 2d Dept. 1956 )( " The words of a statute ' are to have a rational interpretation, to be collected from the words and the policy which may be reasonably supposed to have dictated the enactment; and the interpretation may be rigorous or ( liberal ) depending upon the interests with which it deals " ) ].
Generally Accepted Accounting Principals
The School District's auditors need " unrestricted access to the balance sheet accounts for all years in question "[FN27] and they shall have
it without further delay. The Osborn's income and expenses statements, balance sheet accounts, general ledgers [FN28], statements of fund balances
[ not-for-profit organizations ] and books and records are interrelated.
All of the Osborn's books and records, all General Ledgers, all balance sheet accounts and all other financial documents " for all years in question " shall be made available as needed by the auditors, subject to the confidentiality agreement proposed by the School District, in completing 22 NYCRR § 202.59(c) audit previously ordered by this Court.
There is ample authority for this approach including the policy underlying the enactment of C.P.L.R. 3140, N.Y. Courts Rules § 678.1-678.3 and 22 NYCRR § 202.59 and Generally Accepted Auditing Standards
[ " GAAS " ], Generally Accepted Accounting Principals [ " GAAP " ] and the American Institute of Certified Public Accountants Professional Standards [ " AICPA Standards " ][ See e.g., AICPA Standard § AU 623.13 ( " Also, many financial statement elements are interrelated...The auditor should be satisfied that elements, accounts or items that are interrelated with those on which he or she has been engaged to express an opinion have been considered in expressing an opinion " [ emphasis added ]); AICPA Standard § AU 508.33 ( " Limited reporting engagements-The auditor may be asked to report on one basic financial statement and not on the others. For example, he or she may be asked to report on the balance [*10]sheet and not on the statements of income, retained earnings or cash flows. These engagements do not involve scope limitations if the auditor's access to information underlying the basic financial statements is not limited and if the auditor applies all the procedures he considers necessary in the circumstances; rather, such engagements involve limited reporting objectives " [ emphasis added ].
Lastly, all outstanding complaints [FN29] of the School District's auditors shall be addressed by the Osborn and resolved forthwith.
The foregoing constitutes the Decision and Order of the Court.
Dated: July 22, 2004
 White Plains, N.Y.
______________________________
 THOMAS A. DICKERSON
SUPREME COURT JUSTICE
TO:
Peter G. Bergmann, Esq.
Cadwalader, Wickersham & Taft, LLP
Attorneys for Petitioner
100 Maiden Lane
New York, N.Y. 10038
John E. Watkins, Jr., Esq.
Attorney for Petitioner
175 Main Street
White Plains, N.Y. 10601
[*11]
Robert A. Weiner, Esq.
McDermott, Will & Emery
Attorneys for Respondents
50 Rockefeller Plaza
New York, N.Y. 10020-1605
Kevin Plunkett, Esq.
Corporation Counsel
City of Rye
Thacher Proffitt & Wood LLP
50 Main Street, 5th Floor
White Plains, N.Y. 10606

ENDNOTES
Footnotes

Footnote 1: Matter of Miriam Osborn Memorial Home Association v. Assessor of the City of Rye, 275 A.D. 2d 714, 713 N.Y.S. 2d 714 ( 2d Dept. 2000 ).

Footnote 2: Id.

Footnote 3: Order dated March 31, 2003 [ J. Rosato ].

Footnote 4: Order dated October 7, 2003 [ J. Rosato ].

Footnote 5: Order dated March 31, 2003 [ J. Rosato ], Order dated July 23, 2003 [ J. Rosato ], Order dated August 14, 2003 [ J. Rosato ],
Order dated September 11, 2003 [ J. Rosato ], Order dated October 7, 2003 [ J. Rosato ] and Order dated January 6, 2004 [ J.
Rosato ].

Footnote 6: Order dated March 31, 2003 [ J. Rosato ].

Footnote 7: Order dated January 6, 2004 [ J. Rosato ]( "...as recently as January 2002, petitioner permitted the School District a prior inspection, as well as permission to undertake videotaping of the premises. Finally, the School District in its 11/5 supporting affidavit herein, fails to point out that this Court in its Decision and Order 9/11/03...has already denied its permission to undertake another physical inspection of the subject
premises " ).

Footnote 8: Order dated January 6, 2004 [ J. Rosato ].

Footnote 9: Letter of Robert A. Weiner dated March 18, 2004 [ " Weiner Letter I " ].

Footnote 10: Letter of Brian T. McGovern dated March 22, 2004 [ " McGovern Letter I " ].

Footnote 11: Letter of Robert A. Weiner dated May 11, 2004 [ " Weiner Letter II " ].

Footnote 12: Letter of Lisa Linsky dated June 9, 2004 [ " Linsky Letter
I " ].

Footnote 13: Memorandum of Robert Neumann dated June 14, 2004 [ " Newmann Memo. I " ].

Footnote 14: Letter of Peter Bergmann dated June 21, 2004 [ " Bergmann Letter I " ].

Footnote 15: Id.

Footnote 16: Letter of Jeffrey Blumnegold dated June 24, 2004
[ " Blumengold Letter I " ].

Footnote 17: Letter of Robert A. Weiner dated June 30, 2004 [ " Weiner Letter III " ].

Footnote 18: Memorandum of Bruce Silverman dated June 23, 2004
[ " Silverman Memo. I " ].

Footnote 19: Letter of Robert A. Weiner dated July 15, 2004 [ " Weiner Letter IV " ].

Footnote 20: Letter of Peter G. Bergmann dated July 9, 2004 [ " Bergmann Letter II " ]( " It is apparent that the School District is not reviewing a representative sample of accounts and invoices but is targeting certain items of expense for purposes other than to ' substantiate ' the Osborn's Statements of Income and Expenses...Their document requests ( e.g., for legal bills, appraisal invoices, credit card charges ) and statements reveal a different agenda...the auditors were actually trying to ' normalize ' The Osborn's income and expenses " ).

Footnote 21: Id.

Footnote 22: New York City has its own procedural rules for condemnation and tax certiorari proceedings [ See e.g., 41 Kew Gardens Road Associates v. Assessor In Charge of Queens County, 70 N.Y. 2d 325, 514 N.E. 2d 1114, 520 N.Y.S. 2d 544 ( 1987 )].

Footnote 23: Bergmann Letter II.

Footnote 24: Given the urgency of the issues raised herein and the need for an early decision clarifying the scope of the School District's § 202.59 audit, this Court was unable to locate the comments referred to by Chief Judge Cooke. This is not to say, however, that such comments, especially, those that may relate to proposed § 202.59(d), do not, in fact, exist. 

Footnote 25: Bergmann Letter II.

Footnote 26: Bergmann Letter II.

Footnote 27: Silverman Memo. I.

Footnote 28: Letter of Jeffrey G. Blumengold dated June 2, 2004
( " Another example of the lack of good faith in carrying out the Order of the Court is in the documents they have provided. Specifically, the 2003 General Edger provided, which is marked as being printed on May 27, 2004 ( so it is likely this was produced for us alone ) begins on page 673, thereby omitting the first 672 pages of their General Ledger. Our examination leads us to believe that pages 1-672 will represent all of the balance sheet accounts, which are necessary to conduct our audit " )
{ " Blumengold Letter II " ].

Footnote 29: Letter of Jeffrey Blumengold dated July 15, 2004 ( e.g.,
" (1) This was insufficient, as we were not provided with the same level of detail for the individual accounts that comprise each of the broad categories...(2) we still have not been provided with any of the detailed support for revenue ...(3) we have not received any of the required materials "...(4) not one invoice has yet been provided to us " )[ " Blumengold Letter
III " ].